UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:16-CV-691-BR

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MAUREEN DENISE MCOUAT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's motion for directed reference to the bankruptcy court, (DE # 23), and motion for judgment on the pleadings, (DE # 21). Plaintiff (the "government") filed a response to each motion. (DE ## 26, 27.) This matter is ripe for disposition.

## I. BACKGROUND

In 2007 or early 2008, defendant began discussions with the U.S. Department of Agriculture-Farm Service Agency ("FSA") to obtain a loan to purchase a farm. (Compl., DE # 1, ¶ 10; Answer, DE # 5, ¶ 10.) On 13 March 2008, defendant informed the FSA that she had found a farm property to purchase in Lillington, North Carolina, (Compl., DE # 1, ¶ 11; Answer, DE # 5, ¶ 11), and that she would need an operating loan in order to cover various expenses, (Compl., DE # 1, ¶ 13; Answer, DE # 5, ¶ 13). On 28 March 2008, defendant submitted an FSA-2001 form, Request for Loan Assistance, requesting an operating loan in the amount of $53,000. (Compl., DE # 1, ¶ 15; Answer, DE # 5, ¶ 15.) On this form, defendant did not list a fence as an expenditure nor state her intention to erect a fence. (Compl., DE # 1, ¶ 17; Answer, DE # 5, ¶

17.)   On 30 April 2008, defendant submitted an FSA-2038 form, Farm Business Plan Worksheet, detailing projected income and expenses for the farm for the production cycle of 1 May 2008 to 30 April 2009.  (Compl., DE # 1, Ex. A.)   On that document, defendant did not list a fence as an expenditure, state her intention to erect a fence, or state her intention to purchase a nearby residence.  (Compl., DE # 1, ¶ 21; Answer, DE # 5, ¶ 21.)

On 29 August 2008, defendant notified the FSA of "[r]ecent financial changes," including, among other things, purchasing and paying for a 33-foot travel trailer meaning that she would no longer have any monthly rent or house payments.  (Compl., DE # 1, Ex. B.) Defendant also listed needed operating expenses that were "their own collateral," including a greenhouse.  (Id.)  Defendant further detailed approximately $20,000 worth of operating expenses needing collateral.  (Id.)

The government alleges that in late September 2008, defendant signed a Farm Assessment form acknowledging "there were no planned changes to the operation from the proposed plan," (Compl., DE # 1, ¶ 29), as well as a Form FSA-2028, Security Agreement, listing a greenhouse as collateral for the operating loan, (id. ¶ 30), and stating she would "use the operating loan funds for the purpose for which they were advanced, comply with the farm operating plan, and care for and maintain collateral in good condition," (id. ¶ 31).  According to the government, the operating loan proceeds in the net amount of $43,000 were disbursed to defendant on 25 September 2008.[1]  (Compl., DE # 1, ¶ 32.)

On 15 February 2009, defendant spent $18,657 of the farm operating loan proceeds on a fence erected on her farm, which was not listed in prior communications or agreements with the FSA.  (Id. ¶ 33; Answer, DE # 5, ¶ 33.)   Defendant alleges that the fence was an "essential farm

---

[1] "The total operating loan amount was for $53,000 but FSA paid $10,000 to the sellers of the property for the purchase of the tractor and equipment."  (Compl., DE # 1, at 7 n.1.)

2

operating expense," as wild animals were destroying her crops and killing her livestock. (Answer, DE # 5, ¶ 33.)

On 25 February 2009, defendant obtained a new loan from a separate lender for a nearby residence in the amount of $157,916.00. (Compl., DE # 1, ¶ 34; Answer, DE # 5, ¶ 34.) Defendant paid a $4,000 deposit and $3,973 in closing costs. (Id.) The government contends that these payments were drawn from the farm operating loan proceeds, (Compl., DE # 1, ¶ 34), while defendant claims the money was paid out of her wages and 401K, (Answer, DE # 5, ¶ 34). Defendant made four mortgage payments of $1085.98 each on the 2009 residential loan. (Compl., DE # 1, ¶ 35; Answer, DE # 5, ¶ 35.) The parties dispute whether these payments were drawn from the operating loan proceeds or defendant's personal finances. (Id.)

Contrary to her representation to the FSA, defendant never acquired a greenhouse to serve as collateral for the operating loan. (Compl., DE # 1, ¶ 37; Answer, DE # 5, ¶ 37.)

Defendant purportedly defaulted on her operating loan. (Compl., DE # 1, ¶ 36.) By judgment entered 2 March 2015, the government obtained a default judgment against defendant for $117,564.92 plus interest, which amount included the amount owed on the operating loan. United States v. McOuat, No. 5:14-CV-562-BO (E.D.N.C.) (DE # 8).

On 23 September 2015, defendant filed a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 1301, *et seq.* (Answer, DE # 5, Ex. A.) The government's default judgment constituted a judicial lien, and on 29 October 2015, defendant filed in the bankruptcy court a motion to avoid the lien pursuant to 11 U.S.C. § 522(f). (4/26/16 Order, DE # 22-1, at 1, 3, 8.) In its response to defendant's motion, the government argued that the motion should be denied as:

> [defendant] potentially made fraudulent misrepresentations and/or committed a fraud on the United States that could result in (a)

3

> violation(s) of the False Claims Act, 31 U.S.C. § 3729, et seq., (b) imposition of a constructive trust in the Property in favor of the United States, excluding the property from the bankruptcy estate under § 541(d) and/or (c) a finding that the [defendant] had unclean hands . . . .

(DE # 22-2, ¶ 7.)

On 26 April 2016, the bankruptcy court granted defendant's motion to avoid the lien, (DE # 22-1, ¶ 28), finding "insufficient evidence of fraud or wrongdoing to deny [defendant] her entitlement to a homestead exemption in the Property," (id. ¶ 22), and that "[e]ven though purchase of the fence was not part of [defendant's] Farm Business Plan Worksheet, the Court has no hesitation in finding the fence to be a necessary expense for [defendant's] farming operations in this instance," (id. ¶ 24). The court further concluded "[defendant's] actions and manner in which she used the Operating Loan proceeds do not shock the Court or rise to the level of egregious conduct that has been condemned by other courts." (Id. ¶ 26.)

Following the bankruptcy court's ruling, the government commenced the present case on 21 July 2016, asserting claims "to recover statutory damages and civil penalties under the False Claims Act (hereafter 'FCA'), 31 U.S.C. §§ 3729, et seq., and to recover all available damages for unjust enrichment and payment under mistake of fact."[2] (Compl., DE # 1, ¶ 1.)

On 29 March 2017, defendant filed her motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Then, on the following day, she filed a motion for directed reference of this action to the bankruptcy court.

---

[2] Based on the filing of the complaint, on 28 July, 2016, defendant filed a motion seeking sanctions for violation of the automatic stay of 11 U.S.C. § 362. In re McOuat, No. 15-05150-5-SWH (Bankr. E.D.N.C.) (DE # 43). The bankruptcy court denied defendant's motion, finding that the government's claims fall within the regulatory and police powers exception to the automatic stay in 11 U.S.C. § 362(b)(4). Id. (DE # 57, at 1).

4

## II. DISCUSSION

**A. Defendant's Motion for Directed Reference to Bankruptcy Court**

As authorized under 28 U.S.C § 157(a), this court has issued a standing order providing that:

> any and all cases under Title 11 and any and all proceedings arising under Title 11 or arising in or related to a case under Title 11, be and hereby are referred to the bankruptcy judges for the Eastern District of North Carolina. This Order applies to all pending bankruptcy cases and proceedings, . . . and all bankruptcy cases and proceedings hereinafter filed in the Eastern District of North Carolina.

No. 84-PLR-4, at 1 (Aug. 3, 1984). Defendant argues that pursuant to this order, the court must refer this case to the bankruptcy court as it is a core proceeding. Alternatively, she contends that the case must be referred to the bankruptcy court as it is "related to" a Title 11 case.

   *1. Core Proceeding*

"[C]ore proceedings are those that arise in a bankruptcy case or under Title 11." Stern v. Marshall, 564 U.S 462, 476 (2011). "Proceedings 'arising under' Title 11 are causes of action created or determined by a statutory provision of Title 11." Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.), 449 B.R. 860, 873 (Bankr. M.D.N.C. 2011) (citing In re Harris, 590 F.3d 730, 737 (9th Cir. 2009); Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006)). "A proceeding or claim 'arising in' Title 11 is one that is not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy. Therefore, a controversy arises in Title 11 when it would have no practical existence *but for* the bankruptcy."[3] Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831, 835 (4th Cir. 2007)

---

[3] Section 157(b)(2) provides a non-exhaustive list of core proceedings. 28 U.S.C. § 157(b)(2). While defendant cites to some of the matters on the list, she does not argue that the claims here constitute one of those items.

(internal quotation marks and citations omitted). It is not sufficient that the "claim[] arises *during* the pendency of the Chapter 11." Id. at 836.

First, the government's claims do not arise under Title 11. The FCA claims are created by 31 U.S.C. § 3729, and Title 11 has no bearing on defendant's liability under the FCA. Additionally, the government's unjust enrichment and payment by mistake of fact claims are derived from the common law and do not originate in Title 11. See United States v. Weiss, No. 97-CV-4949, 1998 WL 118091, at *3 (E.D.N.Y. Mar. 13, 1998) (holding that "[debtor's] liability to the United States . . . will be determined on the bases of common law fraud and the False Claims Act," and is, therefore, not core).

Second, the government's claims do not "arise in" a Title 11 case, as they could have existed outside of the bankruptcy case. The government's claims stem from alleged misconduct of defendant in regards to the FSA operating loan. The alleged acts forming the basis of the government's claims occurred prior to defendant filing her bankruptcy petition. These are not claims that would have no existence outside of the bankruptcy, as the United States could have brought these claims regardless of whether defendant had ever filed for bankruptcy. Cf. Grausz v. Englander, 321 F.3d 467, 471-72 (4th Cir. 2003) (finding a malpractice claim asserted by the debtor against a firm based on malpractice allegedly committed in the bankruptcy case "arose in" the bankruptcy case); Albert v. Site Mgmt., Inc., 506 B.R. 453, 456 (Bankr. D. Md. 2014) (holding negligence, breach of contract, and fraud claims between the plaintiff, who was the debtor's disbursing agent, and the defendant, who the plaintiff appointed as the debtor's leasing agent and property manager, "arose in" bankruptcy, as these claims would have no existence but for the bankruptcy).

Defendant relies on Stern v. Marshall in support of her argument that the government's claims are core. Contrary to defendant's suggestion, the Stern Court did not set forth a test to determine whether a proceeding is core. Rather, the issue there was whether the debtor's counterclaim, which was core under § 157(b)(2)(C), satisfied the requirements of Article III and was *constitutionally* core. See Stern, 564 U.S. at 475, 482. The two-prong test in Stern is designed to test the constitutionality of a bankruptcy court's ability to enter a final judgment on core proceedings, not to determine whether proceedings are core in the first instance, i.e., *statutorily* core. See Moses v. CashCall, Inc., 781 F.3d 63, 70 (4th Cir. 2015).

The government's claims neither "arise under" Title 11 nor "arise in" a Title 11 proceeding.

### 2. "Related to" a Title 11 case

> [F]or "related to" jurisdiction to exist at the post-confirmation stage,[4] the claim must affect an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding. Practically speaking, under this inquiry matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.

Valley Hist. Ltd., 486 F.3d at 836-37 (internal quotation marks and citations omitted). This close nexus test is intended to "insure[] that the proceeding serves a bankruptcy administration purpose on the date the bankruptcy court exercises ['related to'] jurisdiction," so that the bankruptcy court's jurisdiction does not "extend beyond the limited jurisdiction conferred upon bankruptcy courts in the post-confirmation context." Id. at 837 (citation omitted).

---

[4] On 10 April 2017, after defendant's current motions were submitted, the bankruptcy court confirmed defendant's bankruptcy plan. In re McOuat (DE # 77).

7

Here, there is no close nexus between the government's claims and defendant's bankruptcy plan. If the government ultimately obtained a judgment against defendant in this action, it would be unsecured, (Pl.'s Resp., DE # 27, at 10), and defendant's confirmed plan does not provide for payment to unsecured creditors, see In re McOuat (DE # 76, ¶¶ 6, 13). Any judgment obtained by the government, therefore, will not affect the "implementation, consummation, execution, or administration of the confirmed plan," as the plan only mandates payments to secured creditors, (see id. ¶ 12).

The absence of a close nexus is further evidenced by the bankruptcy court's denial of defendant's motion for sanctions on the basis that the government violated the automatic stay of 11 U.S.C. § 362 by bringing this action. In its order, the bankruptcy court relied in part on United States v. Commonwealth Companies, 913 F.2d 518, 524 (8th Cir. 1990), noting that the court there "reject[ed] arguments that an action under the False Claims Act to obtain a money judgment (not enforcement of a money judgment) is one that conflicts with the bankruptcy court's authority over the debtor's estate . . . ." In re McOuat (DE # 57, at 5). The government is seeking the entry of a money judgment in this action, but recognizes it cannot collect or execute on any judgment during the pendency of defendant's bankruptcy. (Pl.'s Resp., DE # 27, at 10-11.) Because the government does not seek to enforce any potential judgment, and there is no mechanism within the bankruptcy plan to regulate or require payments to unsecured creditors, the government's claims are not related to defendant's bankruptcy case.

In the absence of a core proceeding or "related to" jurisdiction, no ground exists for this court to refer this action to the bankruptcy court.

### B. Defendant's Motion for Judgment on the Pleadings

In addition to her motion for directed reference, defendant filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A court reviews a Rule 12(c)

8

motion under the same standard as a Rule 12(b)(6) motion. Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). Under this standard, a claim will be dismissed if the plaintiff fails to "state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is meant to test the sufficiency of a complaint rather than resolving any disagreements "surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). The court assumes the facts alleged are true and draws all reasonable factual inferences in favor of the nonmoving party. Burbach, 278 F.3d at 406. As a result, "a 12(b)(6) [or 12(c)] motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." Ashcroft v, Iqbal, 556 U.S. 662, 678 (2009).

Additionally, on a Rule 12(c) motion, "the factual allegations of the answer are taken as true, to the extent they have not been denied or do not conflict with the complaint . . . [and] the court may consider documents incorporated by reference in the pleadings." Farmer v. Wilson Housing Auth., 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004) (citation omitted). Furthermore, "[c]ourts may consider relevant facts obtained from the public record, so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (internal quotation marks and citation omitted).

Defendant argues that the government's claims should be dismissed for several reasons. First, defendant argues that the government's fraud claim was adjudicated before the bankruptcy

9

court, and, therefore, the doctrine of res judicata bars the government's claims here. Second, defendant argues that the government fails to state a claim under the FCA. Third, defendant argues that the government's common law claims fail as a matter of law because there was a written contract between the parties. Finally, defendant argues that the statute of limitations bars all of the government's claims. The court considers each argument in turn.

    *1. Res Judicata*

Invoking res judicata, defendant contends that the bankruptcy court's order allowing her to avoid the judicial lien precludes all the government's claims. "Under the doctrine of *res judicata,* or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A., 816 F.3d 273, 276 (4th Cir. 2016) (internal quotation marks and citation omitted). Res judicata "blockades unexplored paths that may lead to truth[ and] therefore is to be invoked only after careful inquiry." Brown v. Felsen, 442 U.S. 127, 132 (1979). For res judicata to apply to a claim, "[t]here must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." Providence Hall, 816 F.3d at 276 (internal quotation marks and citation omitted).[5] Of particular relevance here, for the identity of the cause of action element to be satisfied, the court must find that the new claim "*is based on the same underlying transaction [from the first suit] and could have been brought in the earlier action*." Id. at 282 (emphasis added) (internal quotation marks and citation omitted). Res judicata is an affirmative defense, Ga. Pac. Consumer Prod., LP v.

---

[5] In addition to these "formal" elements, the court takes into account "two practical considerations." Providence Hall, 816 F.3d at 276. Those considerations are: (1) "whether the party or its privy knew or should have known of its claims at the time of the first action and [(2)] whether the court that ruled in the first suit was an effective forum to litigate the relevant claims." Id. (citation omitted).

10

Von Drehle Corp., 710 F.3d 527, 533 (4th Cir. 2013), and as such, the defendant bears the burden of proof, S. Appalachian Mountain Stewards v. A & G Coal Corp., 758 F.3d 560, 569 (4th Cir. 2014).

Resolution of the applicability of res judicata here turns on the second element, i.e., the identity of the cause of action. There is no doubt that what the government claimed in the bankruptcy proceeding and its claims here are based on the same transaction, that is, defendant's purported representations in connection with the operating loan and her use of the loan proceeds. Even so, and despite defendant's argument to the contrary, what the parties litigated in the bankruptcy court is not the "identical fraud claim," (Def.'s Mem., DE # 22, at 8), before this court. Although the bankruptcy court considered fraud as a reason to prevent avoidance of the judicial lien, the standards for fraud for the purposes of defendant's avoidance motion and for FCA liability are different. In evaluating the bankruptcy motion, the bankruptcy judge could not "find sufficient evidence to conclude that [defendant] acted with the intent to hinder, delay, or defraud [the government] in relation to the Property or with her use of the Operating Loan proceeds." (4/26/16 Order, DE # 22-1, at 7.) Unlike the standard the bankruptcy court considered, the FCA "require[s] no proof of specific intent to defraud," 31 U.S.C. § 3729(b)(1)(B)— acting "in deliberate ignorance of the truth or falsity," id. § 3729(b)(1)(A)(ii), or "in reckless disregard of the truth or falsity," id. § 3729(b)(1)(A)(iii), is enough to establish liability. See also United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 728 (4th Cir. 2010) ("The FCA's scienter requirement does not demand 'specific intent to defraud' and can be satisfied by proving only 'reckless disregard of the truth or falsity of the information.'" (citing 31 U.S.C. § 3729(b)). Given these different legal standards, the government's claim in the bankruptcy proceeding and its claims now are not the same claims.

11

The issue therefore becomes whether the government *could* have brought its claims in the bankruptcy proceeding.

To properly evaluate whether the government could have brought its claims in the previous proceeding, such that there would be an identity of the cause of action, the court must assess that proceeding's procedures. See George v. City of Morro Bay (In re George), 318 B.R. 729, 737 (B.A.P. 9th Cir. 2004) (considering whether asserting a counterclaim in the previous bankruptcy "litigation would have been procedurally out of order" when evaluating whether claim preclusion applies), aff'd, 144 F. App'x 636 (9th Cir. 2005). In the bankruptcy court, defendant as the debtor moved to avoid "the fixing of a [judicial] lien on an interest of the debtor in property to the extent that such lien impairs an exemption" pursuant to 11 U.S.C. § 522(f)(1). Such "a proceeding . . . shall be by motion in accordance with Rule 9014," Fed. R. Bankr. P. 4003(d), which means the proceeding is a "contested matter," Fed. R. Bankr. P. 9014(a). Unlike adversary proceedings in bankruptcy, contested matters use "less formal procedures." In re Wilkinson, 196 B.R. 311, 315 (Bankr. E.D. Va. 1996); see also Gentry v. Siegel, 668 F.3d 83, 88 n.1 (4th Cir. 2012) (noting that the contested matter "process appears to be intended as a simple process"). They exclude several of the formal Federal Rules of Bankruptcy Procedure, including the rules related to counterclaims, unless "the court . . . direct[s] that one or more of the other [formal rules] shall apply." Fed. R. Bankr. P. 9014(c); see George, 318 B.R. at 737 ("Federal Rule of Bankruptcy Procedure 9014 . . . makes many of the adversary proceeding rules applicable in contested matters, but not the counterclaim rules."). Thus, unless the bankruptcy judge chooses to apply the rules regarding compulsory counterclaims, parties are "not compelled to bring compulsory counterclaims" in contested matters, Vieira v. AGM II, LLC (In re Worldwide Wholesale Lumber, Inc.), 372 B.R. 796, 809 (Bankr. D.S.C. 2007); see also Wade v.

12

State Bar of Az. (In re Wade), 115 B.R. 222, 230 (B.A.P. 9th Cir. 1990) (upholding dismissal of counterclaim by the bankruptcy court because the proceeding "was a contested matter in which a counterclaim was not appropriate"), aff'd, 948 F.2d 1122 (9th Cir. 1991); D-1 Enters., Inc. v. Commercial State Bank, 864 F.2d 36, 39 (5th Cir. 1989) ("Counterclaims are compulsory only in 'adversary proceedings,' but not in the quick motion-and-hearing style 'contested matters.'"); Pettingill Enters., Inc. v. Blackstone Equip. Fin., L.P. (In re Pettingill Enters., Inc.), Nos. 11-12-10515 JA, 12-1217 J, 2012 WL 5387700, at *4 (Bankr. D.N.M. Nov. 2, 2012) ("Rule 7013, which governs counterclaims, is not one of the rules made applicable to contested matters by Rule 9014.") (citations omitted)).

The government could not have brought its claims during the contested matter proceeding in the bankruptcy court. These claims would have been counterclaims, which, as recognized, are not suited for the informal procedures of a contested matter and would have been procedurally inappropriate. Thus, the causes of action are not identical, and res judicata does not preclude the government's claims here.

### 2. Failure to State a Claim Under the False Claims Act

The parties agree that the government must sufficiently plead the following elements for its FCA claims to withstand dismissal: "'(1) [ ] there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter [knowledge]; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim').'" United States ex rel. Rostholder v. Omnicare, Inc., 745 F.3d 694, 700 (4th Cir. 2014) (citation omitted) (alterations in original). Defendant contends that the government cannot show she possessed the requisite scienter or made a false statement because the income and expenses set forth on the Farm Business Plan Worksheet were merely projections. She further

13

argues that, in any event, the applicable statute and regulations permit farm operating loan proceeds to be used for subsistence expenses and fencing.

Defendant's arguments miss the mark. As the government points out, the FCA claims are based on its allegations that defendant misrepresented how she would use the loan proceeds, not that her projected income and expenses differed from the actual amounts. Furthermore, while defendant's expenditures may have ultimately been permissible uses of the loan proceeds, the government has alleged that defendant's representations about how she was going to use the proceeds in the first place (i.e., order to obtain the loan) were fraudulent. The government has alleged sufficient facts to state a claim under the FCA.

### 3. Unjust Enrichment and Mistake of Fact Claims

Defendant moves to dismiss the government's unjust enrichment and mistake of fact claims on the basis that the existence of the loan contract between the parties renders the claims meritless. Generally speaking, "[w]here a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie." WRH Mortg., Inc. v. S.A.S. Assoc., 214 F.3d 528, 534 (4th Cir. 2000). However, such claims may be pled alternatively to a FCA contract-based claim and allowed to proceed at the motion-to-dismiss stage. Cf. United States v. Science Applications Int'l Corp., 555 F. Supp. 2d 40, 59-60 (D.D.C. 2008) (recognizing the rule that the government may pursue claims for unjust enrichment and payment by mistake even though a contract between the parties exists but granting summary judgment on those claims because the case was past discovery and the parties acknowledged the existence of the express contract). Because the court deems the government to have pled its common law claims in the alternative to its FCA claims, and because defendant in her answer has denied the complaint's allegations regarding the Security Agreement and her

obligations thereunder, (see Compl., DE # 1, ¶¶ 30, 31; Ans., DE # 5, ¶¶ 30, 31), dismissal at this stage is not warranted.

### 4. *Statute of Limitations*

Defendant's final argument is the government's claims are barred by the applicable statute of limitations. Courts "routinely and appropriately dispose of cases on statute-of-limitations grounds at the Rule 12(c) stage when the pleadings themselves contain sufficient information to make a ruling." Rouse v. Duke Univ., 869 F. Supp. 2d 674, 678 (M.D.N.C. 2012) (citing cases).

Under the FCA, a civil action for violation of 31 U.S.C. § 3729 may not be brought:

> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b). "The limitation period in Section 3731(b)(2) starts when the government knows or should know of 'facts material to the right of action.'" United States ex rel. Sanders v. N. Am. Bus Indus., Inc., 546 F.3d 288, 293-94 (4th Cir. 2008). Specifically, it is the actual or constructive knowledge of "the official of the United States charged with responsibility to act in the circumstances" that is relevant. The Fourth Circuit Court of Appeals has not resolved whether that official must be within the Department of Justice or whether knowledge of other government agencies may be sufficient to start the limitations period. Id. at 296 n.2. Fortunately, this court need not weigh in on this issue as nothing on the face of the pleadings indicates that prior to 21 July 2013 (three years prior to the filing of the complaint), *any*

government official knew, or should have known, that defendant had not used the loan proceeds as she represented she would. Therefore, dismissal of the FCA claims based on the statute of limitations is not appropriate.

As for the government's unjust enrichment and mistake of fact claims, "every action for money damages brought by the United States or an officer or agent thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . ." 28 U.S.C. § 2415(a). This six-year period does not begin to accrue if "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances." 28 U.S.C. § 2416(c). Case law suggests that actual or constructive knowledge of officials at the contracting agency may trigger this limitations period. See United States v. Boeing Co., 845 F.2d 476, 481-82 (4th Cir. 1988), rev'd on other grounds sub nom. Crandon v. United States, 494 U.S. 152 (1990). Nonetheless, for the same reason regarding the FCA claims, dismissal of the common law claims is inappropriate.

### III. CONCLUSION

For the reasons set forth above, defendant's motion for directed reference to the bankruptcy court and motion for judgment on the pleadings are DENIED.

This 19 December 2017.

_____
W. Earl Britt
Senior U.S. District Judge